# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5427 | **DATE** | 3/26/2002 |
| **CASE TITLE** | Berner Foods, Inc., et al. vs. Fidelity and Guaranty Insurance Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for partial summary judgment (Doc. No. 16-1) on the third count of Plaintiff's complaint is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAR 26 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 30 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/26/2002 date mailed notice | |
| ETV courtroom deputy's initials | | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BERNER FOODS, INC., STEPHEN A. KNEUBUEHL, CHERYL M. KNEUBUEHL, and EDWARD C. KNEUBUEHL, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 00 C 5427 |
| FIDELITY AND GUARANTY INSURANCE COMPANY, | ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Berner Foods, Inc. ("Berner"), Stephen A. Kneubuehl, Cheryl M. Kneubuehl, and Edward C. Kneubuehl (collectively "Berner") have brought this action against their liability insurer, Defendant Fidelity and Guaranty Insurance Company ("Fidelity"). Plaintiffs allege that Fidelity has breached its contractual duties to them by failing to (a) defend Berner against several actions in federal and Wisconsin state court (Count I); (b) pursue good faith settlements on behalf of Berner in the federal and state court actions (Count II); and (c) indemnify Berner for sums it was required to pay in settlement of its federal and state court claims and for money allegedly stolen by a Berner employee (Count III).

Defendant seeks partial summary judgment on the third count of Plaintiff's complaint.[1] For the reasons set forth below, Defendant's motion is denied.

---

[1] This case is properly before this court under diversity jurisdiction. See 28 U.S.C. § 1332(a). There is complete diversity between Plaintiff Berner, an Illinois corporation with its principal place of business in Illinois, and the individual Plaintiffs, (continued...)

30

## FACTUAL BACKGROUND

Berner manufactures cheese and cheese products. (Defendant's Statement of Undisputed Facts pursuant to Rule 56.1(a)(3) ("Defendant's Rule 56") ¶ 12.) Stephen A. Kneubuehl is the company president; Cheryl M. Kneubuehl is the company's director of human resources; and Edward C. Kneubuehl is the company's vice president and secretary.[2] (Complaint ¶¶ 2-4.) Fidelity is the successor insurance company responsible for several policies issued to one or more of the Berner parties.[3] (Id. ¶ 5; Defendant's Answer and Affirmative Defenses ("Answer") ¶ 5.)

At all relevant times, Berner and the individual Plaintiffs as directors, officers, and employees of Berner had a business insurance policy (the "policy") with Fidelity. (Defendant's Rule 56 ¶ 1; Berner Policy, Ex. A to Complaint.) The policy,

---

[1](...continued)
all Illinois citizens, and Defendant Fidelity, an Iowa corporation with its principal place of business in Iowa. (Plaintiffs' Second Amended Complaint ("Complaint") ¶¶ 1-5.) The amount in controversy exceeds $2,500,000, exclusive of interest and costs. (Id. ¶ 42.) Venue is also proper under 28 U.S.C. § 1391(c) because Defendant is subject to personal jurisdiction in this district, and therefore resides in the district for purposes of venue. (Id. ¶ 7.) The parties' only mention of the choice of law for this diversity action is to assert that the "issue need not be addressed" because the relevant law is "uniform throughout the country." (Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment, at 8 n.2.) None of the parties has pointed to any conflicts between different jurisdictions or to any choice-of-law provisions in any relevant contract. Where the parties do not raise the choice of law issue, this court may properly apply the law of the state in which the court sits. *See American Home Assur. Co. v. Stone*, 61 F.3d 1321, 1324 (7th Cir. 1995).

[2] Stephen and Edward Kneubuehl are the sons of Berner founder Arnold Kneubuehl; the record does not indicate their relationship to Cheryl Kneubuehl. (Plaintiffs' Federal Court Complaint, *Berner Cheese v. DSI Source, Inc., Rose Steinmann, and Tony Steinmann* ("Plaintiffs' Dairy Source Complaint") at ¶ 9, Exhibit 4 to Defendant's Rule 56.)

[3] For clarity, the court will refer throughout this opinion to both Defendant and its predecessor as "Fidelity."

#1MP30108985504, provided (a) commercial general liability coverage, including coverage for personal injury, advertising injury, and employee dishonesty; (b) commercial umbrella liability coverage; and (c) personal umbrella coverage. (Complaint ¶ 8; Berner Policy, Common Policy Declarations.) The employee dishonesty coverage at controversy in this motion was governed by "crime general provisions." (Berner Policy Employee Dishonesty Coverage Section, excerpted as Exhibit 3 to Defendant's Rule 56.) The crime general provisions require Berner to "transfer to [Fidelity] all [Berner's] rights of recovery against any person or organization for any loss [Berner] sustained and for which [Fidelity has] paid or settled. [Berner] must also do everything necessary to secure those rights and do nothing after loss to impair them." (Berner Policy Crime General Provisions ¶ 19.) The crime general provisions also state that Fidelity "will not pay . . . [e]xpenses related to any legal action." (*Id.* ¶ 3.)

This controversy arose after Berner tendered claims to Fidelity with regard to a dispute between the Berner parties and Dairy Source, Inc. ("Dairy Source"), Rose M. Steinmann ("Rose"), and Tony Steinmann ("Tony") (collectively "the Dairy Source parties"). (Complaint ¶ 10.) Tony was employed by Berner from 1992 until April 1999; during this time he rose from salesman to vice president of sales and marketing. (*Id.* ¶ 11; Plaintiffs' Dairy Source Complaint at ¶ 13; Defendant's Rule 56 ¶ 14.) At all times relevant to this litigation, Tony's wife Rose owned Dairy Source, which was a Wisconsin corporation in the business of brokering cheese. (Complaint ¶ 11; Defendant's Rule 56 ¶¶ 15-16.) Berner bought cheese in bulk through Dairy Source. (Plaintiffs' Dairy Source Complaint ¶ 36.) The businesses of Berner and Dairy Source

became increasingly intertwined; at one point, the two companies split the rent for the Delavan, Wisconsin office where Tony worked. (Complaint ¶ 11; Defendants' Proof of Loss, Exhibit C to Complaint; Plaintiff's Dairy Source Complaint ¶ 31.) The Delavan office housed materials and equipment and business records belonging to each of the companies, and a number of the workers in the office were employed and paid by both companies. (Complaint ¶ 11; Defendant's Rule 56 ¶¶ 17, 19; Plaintiff's Dairy Source Complaint ¶ 34.)

Some time in early 1999, a dispute arose between Plaintiffs and the Dairy Source parties. (Defendant's Rule 56 ¶ 20.) On or about March 12, 1999, the Steinmanns met with Stephen Kneubuehl and expressed a desire to restructure their relationship with Berner. (Plaintiffs' Dairy Source Complaint at ¶ 58.) On March 25, 1999, Tony announced his resignation from Berner, but agreed to continue working for the company until after a cheese trade show in Las Vegas, which was scheduled for the first week of April 1999. (*Id.* ¶ 59; Defendant's Rule 56 ¶ 21.) On April 9, 1999, while Tony and Rose were still in Las Vegas, Berner alleges that it hired Donna Noennig and Philly Jacobs, two employees who worked in the Delavan office and had previously split their time between Dairy Source and Berner files.[4] (Plaintiff's Dairy Source Complaint ¶ 67.) Before April 9, Noennig and Jacobs had been on the Dairy Source payroll, although Berner asserts that it had paid much of their salary to Dairy Source. (*Id.*) Three days later on April 12, 1999, Berner agents, including Edward Kneubuehl and two private investigators, went to the Delavan office and removed some files, office

---

[4] The record does not indicate which agents acted for Berner in this matter.

4

equipment, and customer information belonging to Berner. (Defendant's Rule 56 ¶¶ 22-23; Plaintiffs' Dairy Source Complaint ¶¶ 69-73.) In the process of removing these materials, the Berner employees took possession of some Dairy Source documents.[5] (Defendant's Rule 56 ¶ 23; Plaintiffs' Dairy Source Complaint ¶ 78.)

The record does not indicate precisely when Tony resigned, but the court infers that it happened either immediately before or immediately after the April 12th events at the Delavan office. After Tony and Berner parted ways, three lawsuits (collectively "the Wisconsin litigation") arose between the Berner parties and the Dairy Source parties:[6]

> *Berner Cheese Corp. v. Dairy Source, Inc.*, 99 CV 563, in the federal District Court of the Eastern District of Wisconsin;
>
> *United Dairy Source, Inc. v. Kneubuehl*, 99 CV 0425, in the Walworth County Circuit Court of the state of Wisconsin;[7] and
>
> *Berner Cheese Corp. v. Dairy Source, Inc.*, 99 CV 0228, also in the Walworth County Circuit Court of the state of Wisconsin.

(Defendant's Rule 56 ¶ 33.) In their federal action, the Berner parties brought claims for RICO violations; fraud; conversion; accounting/set-off; misappropriation of trade secrets; conversion or replevin; infringement of trademark; defamation; civil conspiracy

---

[5] The record does not indicate the value or importance of these documents.

[6] The Complaint does not specify when the actions against the Berner parties were filed, but the court infers that they arose after Tony stopped working for Berner in April 1999 and before Berner submitted its first claim to Fidelity on July 12, 1999. (Complaint ¶¶ 12.-13.)

[7] The court draws this caption from Defendant's summary judgment statement. (Defendant's Rule 56 ¶ 33.) The court assumes that "United Dairy Source" refers to the same entity as "Dairy Source."

in violation of state law; and breach of fiduciary duty.[8] (Plaintiffs' Dairy Source Complaint.) Berner alleged that among other things, the Dairy Source parties had made wrongful use of proprietary information received from Berner; prevented Berner from accessing its own customer lists in the Delavan office; wrongfully held Rose out as a Berner employee; and infringed on a trademark and registered World Wide Web domain name belonging to Berner. (*Id.* ¶¶ 18-19; 53-55; 136-142.) The Dairy Source parties brought claims against the Berner parties in two actions. They filed a four-count counterclaim (the "Federal Counterclaim") in Berner's federal lawsuit, alleging breach of contract, tortious interference with contract, injury to business in violation of Wisconsin state law, and misappropriation of trade secrets in violation of Wisconsin state law. (Complaint ¶ 12(a).) In addition, Dairy Source brought its own state court lawsuit, a twelve-count Wisconsin claim (the "Wisconsin Claim"), alleging conversion, civil conspiracy to convert, tortious interference with contract, civil conspiracy to tortiously interfere with contract, civil conspiracy to commit injury to business, civil conspiracy for misappropriation of trade secrets, fraud, civil conspiracy to commit trespass, replevin, and defamation. (*Id.* ¶¶ 12(a), 12(b).) Berner tendered the Federal Counterclaims and Wisconsin Claims to Fidelity through its agent, the Ferguson Agency, Inc. (*Id.* ¶ 12.)

Importantly for the litigation currently before this court, on July 12, 1999 Berner also tendered a claim to Fidelity under its employee dishonesty coverage,

---

[8] Because the record does not include a copy of Berner's state court complaint, the court is uncertain what alleged wrongdoing by Dairy Source supported claims under these theories.

6

asserting that Tony had diverted $353,113.39 of Berner's commissions to Dairy Source. (Defendant's Rule 56 ¶¶ 24, 35; Complaint ¶ 13; 7/12/99 Fidelity Proof of Loss ("Proof of Loss"), Exhibit C to Complaint.) As part of this submission, Berner sent a "Proof of Loss," succinctly summarizing its employee dishonesty claims and attaching a copy of Berner's Federal Court complaint.[9] (Defendant's Rule 56 ¶ 39; Plaintiffs' Rule 56 Response to Defendant's Motion for Partial Summary Judgment ("Plaintiffs' Rule 56") ¶ 39; Proof of Loss.)

On or about August 23, 1999, Ronald Mund, a senior Claim Attorney employed by Fidelity's parent corporation and authorized to handle Fidelity's insurance claims, received pleadings from the different lawsuits between the Berner parties and the Dairy Source parties, as well as a document entitled the Acord Loss Notice, which gave notice of Berner's employee dishonesty coverage claim.[10] (Defendant's Rule 56 ¶ 40; Ronald Mund Affidavit ("Mund Affidavit") ¶ 4, Exhibit 5 to Defendant's Rule 56.) On September 8, 1999, Mund responded to Berner's employee dishonesty claim with a six-page letter that included

    a.    a statement that he was the adjuster assigned to handle Berner's employee dishonesty claim under the policy;

    b.    a summary of Berner's "Duties in the Event of Loss" under Section 5 of the policy, including requirements that Berner provide a "detailed,

---

[9] Somewhat confusingly, the Exhibit before the court that includes Berner's Proof of Loss documents appear to incorporate correspondence from two related, but distinguishable submissions approximately three months apart—one in July and one in October. Although the parties' statements of facts do not establish a clear chronology on this point, the court has attempted to draw reasonable inferences from the dates provided on the documents before it.

[10] Mr. Mund's affidavit does indicate where he received these materials from. In addition, the record does not explain the derivation or meaning of Acord.

7

sworn proof of loss within 120 days" and "Cooperate with [Fidelity] in the investigation and settlement of any claim";

c. a Fidelity Proof of Loss form for Berner's possible use in making an employee dishonesty coverage claim under the policy;

d. a list of Fidelity's requirements for a Proof of Loss under the policy;

e. an excerpt from the crime general provisions portion of the policy, providing that "You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them";

f. a warning that "if [Berner] enters in to [sic] a settlement in connection with the Complaint and/or Counterclaim with any or all of the Defendants in the [federal lawsuit against the Dairy Source parties]], which settlement impairs any rights of recovery [Berner] has against any person or organization, without the written consent of [Fidelity] to such settlement, [Berner] will have breached general Condition 19 of the crime general provisions CR 10 00 06 95 and may void any general coverage otherwise applicable under the employee dishonesty coverage form A - Blanket CR 00 01 10 90."

(Complaint ¶ 16; 9/8/99 Letter from Claim Attorney Ronald G. Mund ("Mund Letter"), Exhibit F to Complaint; Defendant's Rule 56 ¶ 44.) Mr. Mund then retained Mr. Don Mrozek, Fidelity's counsel in the instant litigation, to assist Fidelity in handling the employee dishonesty portion of Berner's claim. (Mund Affidavit ¶ 5.) On October 12, 1999 Berner submitted a more detailed Proof of Loss Statement, alleging that "commissions were diverted to Dairy Source, Inc. by [Tony] in the approximate sum of $330,000 without the knowledge or approval of Berner Cheese senior management." (Fidelity Proof of Loss.) The Proof of Loss also included a two-page table summarizing $273,113.39 of "Disputed Claims" for the period from 1993 until 1999 in connection with sixty-one of Berner's customers, and a mention of an unexplained "Estimated

8

Crystal Farms Packaging Claim" for $60,000 to $80,000.[11] (*Id.*)

On July 12, 1999, Berner also asked Fidelity to defend or indemnify Berner against the Federal Counterclaim and State Claims. (Complaint ¶¶ 12, 14, 15; Answer ¶ 12, 14, 15; 10/21/99 Edward Matichek, Fidelity Claim Representative, Federal Claim Letter to Berner ("Federal Claim Letter"), Ex. D to Complaint; Edward Matichek, Fidelity Claim Representative, State Claim Letter to Berner ("State Claim Letter"), Ex. E to Complaint.) On October 21, 1999, Fidelity denied coverage to Berner on the Federal Counterclaims, arguing that the claims against Berner did not constitute claims for "bodily injury," "property damage," or "advertising injury" sufficient to trigger coverage under the policy; on the same day, Fidelity agreed to defend the Berner parties against the State Claims under a reservation of rights, but noted that under the policy, only the defamation count would be indemnified. (Federal Claim Letter; State Claim Letter, Exhibits D and E to Complaint.) The Berner parties allege that they proceeded to hire independent counsel to represent them in both the state and federal cases. (Complaint ¶ 19.)

On March 24, 2000, Berner counsel Lyle Krug sent Fidelity claim representative Ed Matichek a letter noting that Berner and Dairy Source parties met and attempted to reach a settlement and mentioning that Fidelity sent a representative, but one who

---

[11] Surprisingly, the record before the court includes no other documents or correspondence addressing the employee dishonesty claim as a discrete portion of Berner's claims against Fidelity. Apart from his affidavit in support of Defendant in this proceeding, no documents after his September 8, 1999 letter mention Mr. Mund. Mund's affidavit states that he learned of the April 10, 2000 settlement and release between the Berner and Dairy Source parties on June 12, 2000.

9

lacked the authority to contribute indemnification funds.[12] (3/24/00 Krug Letter, Exhibit C to Plaintiffs' Rule 56.) Fidelity concedes that Mr. Matichek, its adjuster, participated in "certain aspects of the settlement negotiations" (Response to Plaintiffs' Statement of Undisputed Facts ¶ 2), but emphasizes that Mr. Matichek was the adjuster assigned to handle Berner's commercial general liability claims and not its employee dishonesty claims (*Id.*; Mund Letter, at 2.)

In his letter, Mr. Krug noted that although negotiations on that date broke down, "[i]n the event that [Berner] is able to settle the claims which it believes are covered by [Fidelity's] policy, [Berner's] settlement should be in no way construed as a waiver of its claims against [Fidelity]." (*Id.*) The letter also notes that "[Fidelity] has been made aware of settlement efforts via phone call by [Berner's] litigation counsel made on March 23, 2000.[13] (*Id.*) In a letter dated March 31, 2000, Mr. Matichek sent

---

[12] Mr. Krug's letter does not indicate which Fidelity representative attended the negotiations. It is not entirely clear from the record whether the negotiations that Fidelity conceded Mr. Matichek participated in were the same as the ones mentioned in Mr. Krug's letter.

[13] On March 28, 2000, Berner's attorney Krug sent a "Standstill Agreement" executed by Berner to Mr. Mrozek, Fidelity's counsel. (Defendant's Rule 56 ¶ 45; 3/28/00 Krug Letter, Exhibit 6 to Defendant's Rule 56; Berner-Fidelity Standstill Agreement, Exhibit 7 to Defendant's Rule 56.) The Standstill Agreement provided, in relevant part, that:
1. [Fidelity] shall have no obligation to make any coverage determination with respect to the claim set forth in the Proof of Loss and, correspondingly, no obligation to make any payment with respect to the claim until such time as all of [the Wisconsin litigation is] concluded by final order from which no appeal is taken;. . . .
3. Berner will provide [Fidelity] with regular reports concerning the status of [all three suits between the Berner and Dairy Source parties] identified above. Further, Berner will not settle any of the [three lawsuits] without giving notice of such settlement to [Fidelity] and allowing [Fidelity] reasonable time in which to consent, object or take no
(continued...)

Berner counsel Duane Hasting, Mr. Krug's partner, a letter offering Berner $250,000 "toward the conclusion of" the suits against the Dairy Source parties and in exchange for Berner's (a) dropping its "first party action" against Fidelity; (b) waiver of all expenses and attorneys' fees from any Berner parties; and (c) a promise that Berner would bring no future claims against Fidelity for payments by Berner parties toward settlement of Dairy Source's claims. (2/6/02 Hasting Affidavit and 3/31/00 Matichek Offer Letter, collectively Exhibit B to Plaintiffs' Rule 56.)

Berner considers this an offer to contribute funds toward settlement of the federal litigation in Wisconsin, and notes that Mr. Matichek's offer neither expressed any objection to the settlement terms under negotiation nor informed Berner that it was required to expressly preserve Fidelity's subrogation right against Berner. (Plaintiff's Rule 56 Statement of Additional Facts that Require Denial of Partial Summary Judgment; 3/31 Matichek Offer Letter.) Fidelity argues that (a) Mr. Mund was unaware of the settlement negotiations (Defendant's Rule 56 Response ¶ 3(a); Mund Affidavit ¶ 12); (b) Mr. Matichek lacked the authority to negotiate a settlement on behalf of Mr. Mund (Defendant's Rule 56 Response ¶ 3(a); Mund Affidavit ¶ 12); (c) the offer made by Mr. Matichek included terms under which Berner would have

---

[13](...continued)
position with respect to such settlement.

. . . .

4. Any judgment or determination of liability in any of the three litigated matters identified above against [Tony] or any other person or entity shall not be binding upon [Fidelity] and shall not be determinative of any coverage under the policy.

(Standstill Agreement, at 2; Defendant's Rule 56 ¶ 47; Plaintiffs' Rule 56 Response ¶ 47.) There is no evidence that Fidelity agreed to this proposal, however, and Berner does not otherwise explain its relevance.

11

released Fidelity (Defendant's Rule 56 Response ¶ 3(b); 3/31 Matichek Offer Letter); and (d) both the general conditions of the employee dishonesty coverage and Mr. Mund's September 8, 1999 letter warned Berner that it must do nothing to "impair" Fidelity's subrogation rights against Tony. (Defendant's Rule 56 Response ¶ 3(c); Berner Policy; Mund Letter.)

Also on March 31, 2000, Fidelity agreed, under a reservation of rights, to defend Berner on the federal claims because they constituted a "potentially covered personal injury claim." (3/31/00 Matichek Counterclaim Letter, Exhibit H to Plaintiff's Rule 56.) On April 7, 2000, Mr. Hasting rejected Fidelity's offer of defense on grounds that any attorney hired pursuant to this agreement would face a conflict of interest between Berner's interests and the rights reserved by Fidelity. (4/7/00 Hasting Letter, Exhibit E to Plaintiffs' Rule 56.) The letter urged Fidelity not to interpret this refusal of coverage as a waiver of Berner's right to direct its own defense or to obtain reimbursement for its defense costs under the policy. (*Id.*)

On April 10, 2000, the Berner parties, the Dairy Source parties, and some of Berner's individual employees executed a Confidentiality Agreement and Release of All Claims.[14] (Defendant's Rule 56 ¶ 48; Plaintiff's Rule 56 ¶ 48; Confidentiality Agreement and Release of All Claims ("Confidentiality Agreement"), Exhibit 8 to Defendant's Rule 56.) As part of this agreement, Berner agreed to pay $1,350,000 to

---

[14] Plaintiffs allege further that Fidelity attempted to settle with the Steinmanns directly without notifying Berner that it planned to do so. Plaintiffs' conclusory allegations on this point, unsupported by other evidence in the record, do not create a triable issue of fact. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002).

12

Tony, Rose, and the trust account of Godfrey, Neshek, Worth, Leibse & Conover, S.C., attorneys for Dairy Source.[15] (Confidentiality Agreement ¶ 3.) In addition to this payment, the parties promised to (a) not sue or file any further complaints against each other with respect to the matters alleged in the federal and state lawsuits; (b) dismiss with prejudice all pending charges and claims against each other; (c) waive all personal and corporate claims against each other deriving from the federal and state legislation; (d) refrain from using, distributing, or copying each other's proprietary information, including recipes, formulas, or pricing information; (e) return each other's recipes, formulas, and pricing information; (f) settle all litigation between them with prejudice, without costs, and on the merits. (*Id.* ¶¶ 4-12; 15.) In addition, Dairy Source agreed to immediately execute all documents necessary to return a proprietary World Wide Web domain name to Berner. (*Id.* ¶ 13.) The Confidentiality Agreement contained the following five provisions:

> 5. Berner hereby covenants not to sue or file charges or any complaints against Dairy Source with respect to the matters alleged in the pleadings, documents, motions, affidavits, depositions or other evidence in the lawsuit or file charges with any federal, state or local agency with respect to any matter related to Dairy Source.
>
> 8. Both parties waive and release any claims of a personal or corporate nature, known or unknown, which they may have against each other and covenant not to sue each other based on any claim or allegation contained in the [Wisconsin litigation], to the date of the signing of this document.
>
> 14. Both parties agree that this release and the covenants not to sue

---

[15] The Confidentiality Agreement mentions no payments or offsets beyond the payment from Berner to Dairy Source. The court assumes the $1.35 million was net of any amounts recoverable by Berner in its own claims against Dairy Source.

13

> contained herein are for the benefit of the signatory parties themselves, their employees, agents, officers, directors, stockholders and attorneys relating to any claim or allegation known or unknown contained in the [Wisconsin litigation] against any of them up to the date of the signing of this agreement.
>
> 19. The parties to this agreement will not discuss the terms of this agreement with anyone . . . Berner may, without violating this agreement, pursue any claims it has against [Fidelity] or its insurer.
>
> 21. Berner represents that it has not heretofore assigned or transferred or purported to assign or transfer to any party or entity, any claim against Dairy Source. Berner further represents that it has not heretofore given permission to or directed any other person to make any claim, report, or complaint against Berner to any federal, state or local agency or other professional organization.

(*Id.*) The Agreement specifically provides that it uses "Dairy Source" to refer to Dairy Source, Inc.; Rose; and Tony. (*Id.*, at 1.) The parties agree that Fidelity neither contributed money toward the settlement nor reimbursed Berner for its costs in defending the state and federal cases. (Complaint ¶¶ 25-26; Answer ¶¶ 25-26.)

On May 15, 2000, the United States District Court for the Eastern District Court of Wisconsin entered an order by agreement between the parties dismissing the Federal Case, no. 99 CV 563, with prejudice and on the merits.[16] (5/15/2000, Stipulation and Order for Dismissal, Exhibit 9 to Defendant's Rule 56.) Plaintiffs filed the Second Amended Complaint initiating this action on October 30, 2000.

---

[16] Although the record is silent on this point, the court assumes that the parties also agreed to dismissals with prejudice and on the merits in the state court cases.

# DISCUSSION

A. **Summary Judgment Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Alexander v. Wisconsin Dep't of Health and Family Servs.*, 263 F.3d 673, 680 (7th Cir. 2001). A genuine issue of material fact exists "only if there is sufficient evidence for a jury to return a verdict for that party." *Alexander*, 263 F.3d at 680, *citing Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999)). When making this determination, the court must examine the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Alexander*, 263 F.3d at 680.

B. **The Policy[17]**

At stake in this summary judgment litigation is the employee dishonesty claim

---

[17] In its motion for summary judgment, Defendant argued that Plaintiffs lacked standing to enforce the policy because they were not named insureds therein. Plaintiffs' Response noted that Berner Cheese Corporation, the corporate named insured, has changed its name to Berner Foods, Inc. but has otherwise remained the same entity. (6/30/2000 State of Illinois Articles of Amendment, Exhibit A to Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment.) In addition, as Defendant's own claims correspondence appears to concede, the individual Plaintiffs are executive officers and directors who are covered under the policy's commercial general liability coverage form. (Commercial General Liability Coverage Form, Exhibit A to Complaint; Federal Claim Letter; State Claim Letter.) In light of these facts, and in light of the fact that Defendant did not address the question of standing in its Reply Memorandum in Support of Partial Summary Judgment, the court concludes that there is no genuine dispute concerning Plaintiffs' standing to enforce the policy.

that Plaintiffs filed under the policy after discovering that Tony had allegedly diverted $353,000 to Dairy Source while working for Berner between 1993 and 1999.[18] Defendant argues that Plaintiffs are not entitled to recovery under the employee dishonesty provisions of the policy because Berner "has destroyed all of Fidelity's subrogation rights." (Defendant's Memo in Support of Summary Judgment, at 2.) Plaintiffs contend that Fidelity's subrogation right has not been destroyed, and that even if it were, Fidelity has not demonstrated that it is entitled to summary judgment. The contractual provision at issue is section 19 of the policy's crime general provisions, which governs the transfer of Berner's rights to recovery against others to Fidelity. In the context of this summary judgment motion, Plaintiffs have the burden of proof to show that they are entitled to recover under the policy, while Defendant must show that there are no disputes of material fact concerning Plaintiffs' right to coverage.

It is established Illinois law that an insurer seeking summary judgment against an insured after a settlement between the insured and a tortfeasor must show that the settlement substantially prejudices the insurer. *See Guese v. Farmers Inter-Ins. Exch.*, 238 Ill. App. 3d 196, 200, 606 N.E.2d 215, 218 (4th Dist. 1992) (reversing summary judgment for insurer that failed to meet burden of showing prejudice as a matter of law); *Gattorna v. American States Ins. Co.*, 122 Ill. App. 3d 582, 589, 461 N.E.2d 675, 680 (2d Dist. 1984) (same); *Marsh v. Prestige Ins. Group*, 58 Ill. App. 3d 894, 896, 374 N.E.2d 1268, 1269 (3d Dist. 1978) (same). See also *Hoel v. Crum & Forster Ins. Co.*,

---

[18] Although the parties have not discussed the value of this indemnification claim, the court notes that the policy's employee dishonesty coverage appears to be limited to $200,000. (Berner Policy, Applicable Coverage Forms, Employee Dishonesty Coverage Form A.)

16

51 Ill. App. 3d 624, 629, 366 N.E.2d 901, 905 (2d Dist. 1977) ("Whether the [insurers] were actually hampered in their defense or substantially prejudiced by the settlement entered into between [insured] and [a third party's insurer] are questions of fact which the summary judgment procedure is not intended to resolve.").

Fidelity argues that the facts of this case clearly establish that it has been prejudiced. Under its understanding, Berner submitted its employee dishonesty claim based on Tony's alleged scheme, proceeded to sue Tony alleging facts similar to those supporting its insurance claim, received notice that the employee dishonesty coverage barred Berner from settling with Tony without Fidelity's consent, and then settled without the contractually-required consent. (Defendant's Reply Memorandum in Support of Partial Summary Judgment, at 8.) Because Berner, unlike the usual insured settling with a tortfeasor, proceeded to *pay* the Dairy Source parties $1.35 million, Fidelity argues, this settlement could prove unusually prejudicial because there is no payment from Tony to Berner to offset any employee dishonesty liability Fidelity may incur.

As Fidelity's own example reflects, however, there are important facts distinguishing Berner's employee dishonesty claim from the insurance claims underlying more typical litigation between insurers and insureds who settle with tortfeasors. The course of dealings between Fidelity and alleged tortfeasor Tony were more extensive than those between, say, an insured driver and a tortfeasor slamming into her car. Instead, Berner's employee dishonesty claim against Tony proved to be only part of a vast array of claims and counterclaims arising between the insured and the Dairy Source parties. For this reason, it is not clear from the current record how

the negotiating parties valued Berner's $353,000 claim against Tony, or indeed whether this claim was part of the negotiations at all. In light of this uncertainty, the court is unable to conclude as a matter of law that Fidelity's loss of the right to sue Tony would substantially prejudice Fidelity's interests. In reaching this conclusion, the court recognizes that the factual uncertainties surrounding the negotiations raise significant questions about Berner's right to recover under the employment dishonesty provisions of the policy: The valuation questions that now preclude Fidelity from showing substantial prejudice may later prevent Berner from demonstrating that it was damaged when it did not receive employee dishonesty indemnification from Fidelity.[19] At the risk of stating the obvious, the court notes further that Berner may not collect twice for the wrong Tony allegedly committed against it. If the settlement agreement with the Dairy Source parties included an offset to Plaintiffs of either $353,000 or the maximum possible recovery under their employee dishonesty policy, they will be barred from collecting from Fidelity on this claim.

---

[19] In light of its disposition of this case, this court does not need to address the issue of whether Berner has also raised material questions of fact about Fidelity's awareness of the ultimate settlement between Berner and the Dairy Source parties. The court notes, however, that there is evidence on the record showing that (a) Berner informed Fidelity that settlement negotiations were ongoing with the Dairy Source parties; (b) Fidelity did not discourage these negotiations, and even sent a representative to one of the negotiations sessions; (c) Fidelity Claim Representative Matichek offered money toward a settlement between Fidelity and the Dairy Source parties while seeking a release of all claims by Berner against Fidelity. The court also finds it potentially significant that the record is also silent on the question of how Fidelity responded to Berner's October 8, 1999 employee dishonesty Proof of Loss. While Fidelity argues that Mr. Matichek had no authority to handle or settle Berner's employee dishonesty claim, it has provided no evidence that an authorized representative ever acknowledged, much less acted upon, the October 8 claim.

## CONCLUSION

For the reasons explained above, Defendant's motion for partial summary judgment (Doc. No. 16-1) on the third count of Plaintiff's complaint is denied.

ENTER:

Dated: March 26, 2002

REBECCA R. PALLMEYER
United States District Judge